AO 93 (Rev. 11/13) Search and Seizure Warrant

# FILED

JUN 1 2017

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
                              DEPUTY CLERK

In the Matter of the Search of                )
SAMSUNG GALAXY SIII CELLULAR                  )
TELEPHONE WITH PHONE NUMBER 916-917-          )
9157 AND IMEI 990004871974440, WHEREVER       )
IT MAY BE FOUND IN THE EASTERN                )
DISTRICT OF CALIFORNIA                        )

Case No.   **2 1 7 -SW - 0 2 8 5     AC**

## SEARCH AND SEIZURE WARRANT

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the          Eastern          District of          California
*(identify the person or describe the property to be searched and give its location)*:

### SEE ATTACHMENT A, attached hereto and incorporated by reference.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

### SEE ATTACHMENT B, attached hereto and incorporated by reference.

YOU ARE COMMANDED to execute this warrant on or before          May 2, 2017          *(not to exceed 14 days)*

☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: any authorized U.S. Magistrate Judge in the Eastern District of California.

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for          days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:   4/21//17 8:15 an          *Judge's signature*

City and state:   Sacramento, California          Allison Claire, U.S. Magistrate Judge
                                                   *Printed name and title*

## Return

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
| | | |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

## Certification

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

Subscribed, sworn to, and returned before me this date.

_____
Signature of Judge                                    Date

## ATTACHMENT A

The property to be searched is a SAMSUNG GALAXY SIII CELLULAR TELEPHONE WITH PHONE NUMBER 916-917-9157 AND IMEI 990004871974440, hereinafter the "Device," wherever it may be found in the Eastern District of California.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

1

## ATTACHMENT B

1.  The DEVICE and all records on the DEVICE described in Attachment A that relate to violations of 18 U.S.C. §§ 2252(a)(2) and 2242(b) including:

-   a.  Any child pornography or visual depictions of minors engaged in sexually explicit conduct in any form, including but not limited to:

    -   i.  Evidence identifying the location from which images of child pornography were downloaded, including date and time of such downloads;

    -   ii.  Evidence identifying whether image and/or video files containing child pornography were ever viewed, to include date and time of such viewing;

    -   iii.  Evidence identifying whether images and/or videos files were deleted, to include date and time of deletion;

-   b.  Any child erotica;

-   c.  Any information pertaining to any individual's sexual interest in minors, including interest in child pornography, visual depictions of minors engaged in sexually explicit conduct, or erotica;

-   d.  Any text messages, emails, chats, or other communications regarding the sexual exploitation of minors;

-   e.  Any items, images, documents, communications, records, and information related to the distribution, receipt or possession of child pornography or visual depictions of minors engaged in sexually explicit conduct;

-   f.  All screen names, user names, and true names of others who may have operated as the source of child pornography or visual depictions of minors engaged in sexually explicit conduct, in any format, downloaded and possessed by the target device;

-   g.  Evidence of user attribution showing who used or owned the DEVICE at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

-   h.  Any evidence of the attempted or actual persuasion, inducement, enticement, or coercion of any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense in any form;

i. All screen names, user names, and true names of others who are identified during the search as having contacted minors;

j. records of Internet Protocol addresses used;

k. Evidence of malicious software ("malware");

l. Evidence of the lack of such malicious software;

m. Passwords, encryption keys, and other access devices that may be necessary to access the Device or the applications contained on the Device; and

n. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

2. Evidence of user attribution showing who used or owned the DEVICE at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

**ORIGINAL**
~~FILED~~

# UNITED STATES DISTRICT COURT
## for the

Eastern District of California

APR 2 1 2017

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

BY _____
DEPUTY CLERK

In the Matter of the Search of )
SAMSUNG GALAXY SIII CELLULAR )
TELEPHONE WITH PHONE NUMBER )
916-917-9157 AND IMEI 990004871974440, )
WHEREVER IT MAY BE FOUND IN THE )
EASTERN DISTRICT OF CALIFORNIA )

Case No. **2 1 7 - SW - 0 2 8 5    AC**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

### SEE ATTACHMENT A, attached hereto and incorporated by reference.

located in the _____ Eastern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized):*

### SEE ATTACHMENT B, attached hereto and incorporated by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 2252(a)(2) & 2422(b) | Distribution and Receipt of Child Pornography/Attempted Enticement |

The application is based on these facts:

### SEE AFFIDAVIT, attached hereto and incorporated by reference.

☐ Continued on the attached sheet.

☐ Delayed notice _____ days (give exact ending date if more than 30 _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Laura D. Mruk
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 4/21/17

_____
*Judge's signature*

City and state: Sacramento, California

Allison Claire, U.S. Magistrate Judge
_____
*Printed name and title*

PHILLIP A. TALBERT
United States Attorney
SHELLEY D. WEGER
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| In the Matter of the Search of: | CASE NO. |
|---|---|
| SAMSUNG GALAXY SIII CELLULAR TELEPHONE WITH PHONE NUMBER 916-917-9157 AND IMEI 990004871974440, WHEREVER IT MAY BE FOUND IN THE EASTERN DISTRICT OF CALIFORNIA | AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH DEVICE |

1.    I, Laura Mruk, being first duly sworn, hereby depose and state as follows:

## I.    INTRODUCTION AND AGENT BACKGROUND

2.    I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the seizure and examination of property—an electronic device—wherever it may be found in the Eastern District of California, and the extraction from that property of electronically stored information described in Attachment B.

3.    I am a Special Agent with the FBI, and have been since May 1, 2016. I am currently assigned to the Sacramento Division of the FBI, Violent Crime Squad, where I investigate various federal crimes including federal computer crimes. As part of my daily duties, I investigate criminal violations relating to child exploitation and child pornography, including violations pertaining to the illegal distribution, receipt, and possession of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and 2422(b). I have observed and reviewed numerous examples of child pornography and visual depictions of minors engaged in sexually explicit conduct (as defined in 18 U.S.C. § 2256) in all forms

AFFIDAVIT                                                    1

1 of media, including computer media. Throughout the course of my training and experience as a Special
2 Agent, I have learned that individuals utilize online storage accounts like Dropbox to store and distribute
3 child pornography. Moreover, I am a federal law enforcement officer who is engaged in enforcing the
4 criminal laws, including 18 U.S.C. §§ 2252(a)(2) and 2422(b), and I am authorized by the Attorney
5 General to request a search warrant.

6     4.     I am familiar with the information contained in this Affidavit based upon my experience
7 and training, my conversations with other law enforcement officers who have engaged in numerous
8 investigations involving the exploitation of children, including child pornography and enticement, and
9 the investigation I have conducted.

10     5.     This affidavit is intended to show only that there is sufficient probable cause for the
11 requested warrant and does not set forth all of my knowledge about this matter.

12     **II.     IDENTIFICATION OF THE DEVICE TO BE EXAMINED**

13     6.     The property to be searched is a SAMSUNG GALAXY SIII CELLULAR TELEPHONE
14 WITH PHONE NUMBER 916-917-9157 AND IMEI 990004871974440, hereinafter the "Device,"
15 wherever it may be found in the Eastern District of California.

16     7.     The applied-for warrant would authorize the forensic examination of the Device for the
17 purpose of identifying electronically stored data particularly described in Attachment B.

18     **III.     CRIMINAL VIOLATIONS**

19     8.     The purpose of this Affidavit is to support an application for a search warrant of for the
20 Device described more particularly in Attachment A to the warrant, which is fully incorporated herein.
21 The warrant is for the seizure of the items set forth in Attachment B to the warrant, which is
22 incorporated herein. The items set forth in Attachment B may constitute evidence, fruits, contraband,
23 and instrumentalities of violations or attempted violations of: (i) Title 18, United States Code, Section
24 2422(b), Enticement of a Minor, and (ii) Title 18, United States Code, Section 2252(a)(2), Receipt and
25 Distribution of Child Pornography.

26     **IV.     DEFINITIONS**

27     9.     "Child Pornography" includes the definition found at 18 U.S.C. § 2256(8), and is any
28 visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved

AFFIDAVIT     2

the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct. '

10. As used in this Affidavit, "child erotica" means materials or items that are sexually arousing to certain individuals but that are not in and of themselves obscene or do not necessarily depict minors in sexually explicit poses or positions. Such material may include non sexually explicit photographs (such as minors depicted in undergarments in department store catalogs or advertising circulars), drawings, or sketches, written descriptions/stories, or journals.

11. "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. *See* 18 U.S.C. § 2256(5).

12. "Minor" means any person under the age of eighteen years. *See* 18 U.S.C. § 2256(1).

13. "Sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, genital-anal, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any persons. *See* 18 U.S.C. § 2256(2).

The Internet and Definitions of Technical Terms Pertaining to Computers

14. As part of my training and experience, I have become familiar with the Internet (also commonly known as the World Wide Web), which is a global network of computers and other electronic devices that communicate with each other using various means, including standard telephone lines, high-speed telecommunications links (e.g., copper and fiber optic cable), and wireless transmissions including satellite. Due to the structure of the Internet, connections between computers on the Internet routinely cross state and international borders, even when the computers communicating with each other are in the same state. Individuals and entities use the Internet to gain access to a wide variety of information; to send information to, and receive information from, other individuals; to conduct commercial transactions; and to communicate via electronic mail ("e-mail"). An individual who wants to use Internet e-mail must first obtain an account with a computer that is linked to the

1 Internet (through a university, an employer, or a commercial service such as an "Electronic Service
2 Provider" or "ESP" [see definition of "Electronic Service Provider" below]). Once the individual has
3 accessed the Internet, that individual can use Internet mail services, including sending and receiving e-
4 mail. In addition, the individual can visit web sites (see definition of "web sites" below), and make
5 purchases on the web sites.

6     15. Set forth below are some definitions of technical terms, used throughout this Affidavit,
7 and in Attachments A and B hereto, pertaining to the Internet and computers more generally.

8     a) Client/Server Computing: Computers on the Internet are identified by the type of
9 function they perform. A computer that provides resources for other computers on the Internet is
10 known as a server. Servers are known by the types of service they provide; that is, how they are
11 configured. For example, a web server is a machine that is configured to provide web pages to
12 other computers requesting them. A client computer is a computer on the Internet that is
13 configured to request information from a server configured to perform a particular function. For
14 example, if a computer is configured to browse web pages and has web page browsing software
15 installed, it is considered a web client.

16     b) Compressed file: A file that has been reduced in size through a compression algorithm to
17 save disk space. The act of compressing a file will make it unreadable to most programs until
18 the file is uncompressed.

19     c) Computer system and related peripherals, and computer media: As used in this Affidavit,
20 the terms "computer system and related peripherals, and computer media" refer to tapes,
21 cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, disk
22 drives, monitors, computer printers, modems, tape drives, disk application programs, data disks,
23 system disk operating systems, magnetic media floppy disks, hardware and software operating
24 manuals, tape systems and hard drives and other computer-related operation equipment, digital
25 cameras, scanners, in addition to computer photographs, and other visual depictions of such
26 Graphic Interchange formats, including but not limited to, JPG, GIF, TIF, AVI, and MPEG.
27     d) Digital device: includes any electronic system or device capable of storing and/or
28 processing data in digital form, including: central processing units; laptop or notebook

AFFIDAVIT         4

1    computers; personal digital assistants; wireless communication devices such as telephone paging

2    devices, beepers, and mobile telephones; peripheral input/output devices such as keyboards,

3    printers, scanners, plotters, monitors, and drives intended for removable media; related

4    communications devices such as modems, cables, and connections; storage media such as hard

5    disk drives, floppy disks, compact disks, magnetic tapes, and memory chips; and security

6    devices.

7    e)    Domain Name: Domain names are common, easy to remember names associated with an

8    Internet Protocol address (defined below). For example, a domain name of "www.usdoj.gov"

9    refers to the Internet Protocol address of 149.101.1.32.

10   f)    Hash value: A mathematical algorithm generated against data to produce a numeric value

11   that is representative of that data. A hash value may be run on media to find the precise data

12   from which the value was generated. Hash values cannot be used to find other data.

13   g)    Image or copy: An accurate reproduction of information contained on an original

14   physical item, independent of the electronic storage device. "Imaging" or "copying" maintains

15   contents, but attributes may change during the reproduction.

16   h)    Electronic Service Providers ("ESPs") and the Storage of ESP Records: ESPs, formerly

17   known as ISPs (Internet Service Providers) are commercial organizations that are in business to

18   provide individuals and businesses access to the Internet. ESPs provide a range of functions for

19   their customers including access to the Internet, web hosting, e-mail, remote storage, and co-

20   location of computers and other communications equipment. ESPs can offer a range of options

21   in providing access to the Internet including telephone based dial-up, broadband based access via

22   digital subscriber line ("DSL") or cable television, dedicated circuits, or satellite based

23   subscription. ESPs typically charge a fee based upon the type of connection and volume of data,

24   called bandwidth, that the connection supports. Many ESPs assign each subscriber an account

25   name - a user name or screen name, an "e-mail address," an e-mail mailbox, and a personal

26   password selected by the subscriber. By using a computer equipped with a telephone or cable

27   modem, the subscriber can establish communication with an ESP over a telephone line or

28   through a cable system, and can access the Internet by using his or her account name and

1  personal password. ESPs maintain records ("ESP records?) pertaining to their subscribers

2  (regardless of whether those subscribers are individuals or entities). These records may include

3  account application information, subscriber and billing information, account access information

4  (often times in the form of log files), e-mail communications, information concerning content

5  uploaded and/or stored on or via the ESP's servers, and other information, which may be stored

6  both in computer data format and in written or printed record format. ESPs reserve and/or

7  maintain computer disk storage space on their computer system for their subscribers' use. This

8  service by ESPs allows for both temporary and long-term storage of electronic communications

9  and many other types of electronic data and files. Typically, e-mail that has not been opened by

10  an ESP customer is stored temporarily by an ESP incident to the transmission of that e-mail to

11  the intended recipient, usually within an area known as the home directory. Such temporary,

12  incidental storage is defined by statute as "electronic storage." *See* 18 U.S.C. § 2510 (15). A

13  service provider that is available to the public and provides storage facilities after an electronic

14  communication has been transmitted and opened by the recipient, or provides other long-term

15  storage services to the public for electronic data and files, is defined by statute as providing a

16  "remote computing service." *See* 18 U.S.C. § 2711(2).

17  i)  Internet Protocol Address ("IP address"): Every computer or device on the Internet is

18  referenced by a unique Internet Protocol address the same way every telephone has a unique

19  telephone number. An IP address is a series of four numbers separated by a period, and each

20  number is a whole number between 0 and 254. An example of an IP address is 192.168.10.102.

21  Each time an individual accesses the Internet, the computer from which that individual initiates

22  access is assigned an IP address. A central authority provides each ESP a limited block of IP

23  addresses for use by that ESP's customers or subscribers. Most ESP's employ dynamic IP

24  addressing, that is they allocate any unused IP addresses at the time of initiation of an Internet

25  session each time a customer or subscriber accesses the Internet. A dynamic IP address is

26  reserved by an ESP to be shared among a group of computers over a period of time. The ESP

27  logs the date, time, and duration of the Internet session for each IP address and can identify the

28  user of that IP address for such a session from these records. Typically, users who sporadically

access the Internet via a dial-up modem will be assigned an IP address from a pool of IP addresses for the duration of each dial up session. Once the session ends, the IP address is available for the next dial up customer. On the other hand, some ESP's, including most cable providers, employ static IP addressing, that is a customer or subscriber's computer is assigned one IP address that is used to identify each and every Internet session initiated through that computer. In other words, a static IP address is an IP address that does not change over a period of time and is typically assigned to a specific computer.

j)      Log file: Log files are records automatically produced by computer programs to document electronic events that occur on computers. Computer programs can record a wide range of events including remote access, file transfers, logon/logoff times, and system errors. Logs are often named based on the types of information they contain. For example, web logs contain specific information about when a Web site was accessed by remote computers; access logs list specific information about when a computer was accessed from a remote location; and file transfer logs list detailed information concerning files that are remotely transferred.

k)      Malicious Software ("malware"): Software designed to infiltrate a computer without the owner's informed consent. The expression is a general term used by computer professionals to mean a variety of forms of hostile, intrusive, or annoying software or program code. Software is considered malware based on the perceived intent of the creator rather than any particular features. Malware includes computer viruses, worms, trojan horses, most rootkits, spyware, dishonest adware, crimeware, and other malicious and unwanted software.

l)      Metadata: Data contained in a file that is not usually associated with the content of a file but is often associated with the properties of the application or device that created that file. For example, a digital camera photograph often has hidden data that contains information identifying the camera that manufactured it and the date the image was taken.

m)      Steganography: Art and science of communicating in a way that hides the existence of the communication. It is used to hide a file inside another. For example, a child pornography image can be hidden inside another graphic image file, audio file, or other file format.

n)      Downloading: Downloading is the transmission of a file from one computer system to

1  another. From the Internet user's point-of-view, to download a file is to request it from another

2  computer (or from a Web page on another computer) and to receive it.

3  o)  Uploading: Uploading is the transmission in the other direction: from one computer to

4  another computer. From an Internet user's point-of-view, uploading is sending a file to a

5  computer that is set up to receive it.

6  p)  Trace Route: A trace route is an Internet debugging tool used to document the list of

7  inter-connected computers between two computers on the Internet. A trace route will list the

8  names and IP addresses of computers that provide the physical link between two computers on

9  the Internet. Trace routes are useful tools to help geographically identify where a computer on

10  the Internet is physically located, and usually includes information about the registered owner of

11  computers on the Internet.

12  q)  Uniform Resource Locator ("URL"): The address of a resource or file located on the

13  Internet, also called a "domain name."

14  r)  Web Site Hosting: Web site hosting provides the equipment and services required to host

15  and maintain files for one or more web sites and to provide rapid Internet connections to those

16  web sites. Most hosting is "shared," which means that multiple web sites of unrelated companies

17  are on the same server in order to reduce associated costs. When a client develops a Web site, the

18  client needs a server and perhaps a web hosting company to host it. "Dedicated hosting" means

19  that the web hosting company provides all of the equipment and assumes all of the responsibility

20  for technical support and maintenance of a Web site. "Co-location" means a server is located at a

21  dedicated hosting facility designed with special resources, such as a secure cage, regulated

22  power, a dedicated Internet connection, online security and online technical support. Co-location

23  facilities offer customers a secure place to physically house their hardware and equipment as

24  opposed to keeping it in their offices or warehouses, where the potential for fire, theft, or

25  vandalism is greater.

26  s)  Cloud services: Services made available to users on demand via the Internet from a cloud

27  computing provider's servers as opposed to being provide from a user's own, personal servers.

28  Users can easily share files through cloud accounts with others by simply sending others an

AFFIDAVIT                                                   8

1     online link to the file being shared.

2     t)     Chat: Chat refers to any kind of text communication over the Internet that is transmitted
3     in real-time from sender to receiver. Chat messages are generally short in order to enable other
4     participants to respond quickly and in a format that resembles an oral conversation. This feature
5     distinguishes chatting from other text-based online communications such as Internet forums and
6     email.

7     **A.   Computers and Child Pornography**

8     16.     Based upon my knowledge, training, and experience in child exploitation and child
9 pornography investigations, and the experience and training of other law enforcement officers with
10 whom I have had discussions, computers and computer technology have revolutionized the way in
11 which child pornography is produced, distributed and utilized. Prior to the advent of computers and the
12 Internet, child pornography was produced using cameras and film, resulting in either still photographs or
13 movies. The photographs required darkroom facilities and a significant amount of skill in order to
14 develop and reproduce the images. As a result, there were definable costs involved with the production
15 of pornographic images. To distribute these images on any scale also required significant resources. The
16 photographs themselves were somewhat bulky and required secure storage to prevent their exposure to
17 the public. The distribution of these wares was accomplished through a combination of personal
18 contacts, mailings, and telephone calls, and compensation for these wares would follow the same paths.
19 More recently, through the use of computers and the Internet, distributors of child pornography use
20 membership-based/subscription-based web sites to conduct business, allowing them to remain relatively
21 anonymous.

22     17.     In addition, based upon my knowledge, training, and experience in child exploitation and
23 child pornography investigations, and the experience and training of other law enforcement officers with
24 whom I have had discussions, the development of computers has also revolutionized the way in which
25 child pornography collectors interact with, and sexually exploit, children. Computers serve four basic
26 functions in connection with child pornography: production, communication and distribution, and
27 storage. More specifically, the development of computers has changed the methods used by child
28 pornography collectors in these ways:

a) Production: Producers of child pornography can now produce both still and moving images directly from a common video or digital camera. The camera is attached, using a device such as a cable, or digital images are often uploaded from the camera's memory card, directly to the computer. Images can then be stored, manipulated, transferred, or printed directly from the computer. Images can be edited in ways similar to how a photograph may be altered. Images can be lightened, darkened, cropped, or otherwise manipulated. The producers of child pornography can also use a device known as a scanner to transfer photographs into a computer-readable format. As a result of this technology, it is relatively inexpensive and technically easy to produce, store, and distribute child pornography. In addition, there is an added benefit to the pornographer in that this method of production does not leave as large a trail for law enforcement to follow.

b) Communication and Distribution: The Internet allows any computer to connect to another computer. By connecting to a host computer, electronic contact can be made to literally millions of computers around the world. In addition, the Internet allows users, while still maintaining anonymity, to easily locate (i) other individuals with similar interests in child pornography; and (ii) web sites that offer images of child pornography. Child pornography collectors can use standard Internet connections, such as those provided by businesses, universities, and government agencies, to communicate with each other and to distribute child pornography. These communication links allow contacts around the world as easily as calling next door. Additionally, these communications can be quick, relatively secure, and as anonymous as desired. All of these advantages, which promote anonymity for both the distributor and recipient, are well known and are the foundation of transactions between child pornography collectors over the Internet. Sometimes the only way to identify both parties and verify the transportation of child pornography over the Internet is to examine the recipient's computer, including the Internet history and cache to look for "footprints" of the web sites and images accessed by the recipient.

c) Storage: The computer's capability to store images in digital form makes it an ideal repository for child pornography. A single floppy disk can store dozens of images and hundreds of pages of text. The size of the electronic storage media (commonly referred to as a hard drive)

1     used in home computers has grown tremendously within the last several years. Hard drives with

2     the capacity of 1 terrabyte are not uncommon. These drives can store hundreds of thousands of

3     images at very high resolution. Magnetic storage located in host computers adds another

4     dimension to the equation. It is possible to use a video camera to capture an image, process that

5     image in a computer with a video capture board, and save that image to storage in another

6     country. Once this is done, there is no readily apparent evidence at the "scene of the crime." Only

7     with careful laboratory examination of electronic storage devices is it possible to recreate the

8     evidence trail.

**B.    KIK Messenger**

18.    KIK Messenger is an application that is publicly available for download and use on cellular phones and tablet devices running both the Android and iOS operating systems. KIK Messenger offers a medium for users to send messages to other users of the KIK Messenger application. These messages can contain text, images, videos, and emoticons.

19.    When a user creates a KIK Messenger account, the user must supply an email address. The user then creates a unique username, in this case it is "kevinmartind33g", as well as a display name. "Kevinmartind33g" used the display name "Joe Cool." The display name is not unique and this is what other users see when searching for users with whom to communicate. If a user clicks or taps on another user's display name, that user's picture and unique username will be displayed.

20.    The KIK Messenger company is located in Canada. KIK Messenger maintains limited content data on its servers. The KIK Messenger application on an electronic device only holds the most recent 1,000 messages. Thus, when another message is sent, the oldest message disappears from the device, and in most cases is not recoverable from KIK Messenger.

21.    While the KIK Messenger application only runs on mobile devices, I am aware of software that can be installed on a computer this emulates the environment of a mobile device, allowing a user to run KIK Messenger and other mobile device applications on a computer.

**C.    DROPBOX**

22.    "Dropbox" is a file hosting service that offers cloud storage and file synchronization that allows users to access and share files on computers, phones, tablets, and the Dropbox website.

1  Dropbox's services are "designed to make it simple for [a user] to store [his or her] Stuff, collaborate

2  with others, and work across multiple devices." https://www.dropbox.com/privacy (last viewed April 3,

3  2017).

4  23.  Dropbox allows subscribers to obtain accounts at the domain name www.dropbox.com.

5  Subscribers obtain a Dropbox account by registering with an email address. During the registration

6  process, Dropbox asks subscribers to provide basic personal identifying information. This information

7  can include the subscriber's full name, physical address, telephone numbers and other identifiers,

8  alternative e-mail addresses, and, for paying subscribers, means and source of payment (including any

9  credit or bank account number). To sign into the user's Dropbox account, the user enters their email and

10  password. After accessing the Dropbox website, if an individual correctly inputs the email address and

11  password, he or she would have the ability to access and open the account where various materials are

12  stored.

13  24.  When the subscriber transfers a file to a Dropbox account, it is initiated at the user's

14  computer or electronic device, transferred via the Internet to the Dropbox servers, and then can

15  automatically be synchronized and transmitted to other computers or electronic devices that have been

16  registered with that Dropbox account. This includes online storage in Dropbox servers. If the

17  subscriber does not delete the content, the files can remain on Dropbox servers indefinitely. Even if the

18  subscriber deletes their account, it may continue to be available on the Dropbox servers for a certain

19  period of time.

20  25.  Once a user has a Dropbox account, they can invite other Dropbox users to access their

21  shared folders. A shared folder is one in which more than one user has access to, and can add,

22  download, or delete content. If a user is invited to join another user's folder, the invitation request is

23  sent to the registered email account.

24  26.  A Dropbox user can also create a "shared link" to share file content with individuals who

25  do not have a Dropbox account. The Dropbox user sends the shared link, and anyone who clicks on the

26  link can view, comment, or download a copy of the files, however, they cannot edit the original files.

27  *See* https://www.dropbox.com/help/167 (last accessed April 3, 2017).

28

AFFIDAVIT                                              12

## V.  PROBABLE CAUSE

27.  In June 2016, FBI Dallas assisted the Collin County Sheriff's Office (CCSO) with the investigation and federal prosecution of PERSON 1 for Coercion and Enticement of a Minor, Distribution of Child Pornography, and Possession of Child Pornography.

28.  In the course of this investigation, FBI Dallas recovered a 16GB Samsung Galaxy III cellular telephone. Pursuant to PERSON 1's consent and a subsequent search warrant issued by Collin County District Court Judge Mark Rusch, PERSON 1's Samsung cellular telephone was forensically processed. FBI Dallas conducted a full logical extraction, a file system extraction, and physical extraction of the device.

29.  Upon review of the results, FBI Dallas observed KIK messaging communications between PERSON 1 and KIK user "kevinmartind33g" where KIK user "kevinmartind33g" told PERSON 1 that he saw PERSON 1's KIK username on a website beginning with T and ending in X (hereinafter Website TX). During his interview with investigators, PERSON 1 stated that he used the human sexuality forum on the Website TX to find others who wanted to trade child pornography.

### A.    Conversations Between "kevinmartind33g" and Person 1

30.  Upon initial contact, KIK user "kevinmartind33g" asked PERSON 1 what he was into and said he may have some videos to trade. KIK user "kevinmartind33g" followed this message with a second message that contained a Dropbox link and the words "2 vids." PERSON 1 replied, "girls, teens/younger HC"[1] to which KIK user "kevinmartind33g" replied, "cool are you able to play the vids I sent?"

31.  As they continued their conversation, PERSON 1 and KIK user "kevinmartind33g" exchanged multiple Dropbox links that contained image and video files. The links were not accessible to law enforcement at the time the forensics were conducted so investigators were unable to review the files shared between the users to determine whether they depicted child pornography. I previously obtained a federal search warrant to obtain the contents of the exchanged links, but Dropbox has not yet provided the responsive information.

---

[1] Based on my experience and conversations with other federal agents, I know the abbreviation "HC" stands for "hard core" in the vernacular common to pornography.

1     32.    Also during their conversation, KIK user "kevinmartind33g" asked PERSON 1 what was
2 the age of the youngest person PERSON 1 had been with. PERSON 1 replied he had been with a
3 seventeen year old when he was twenty-seven but that he wanted to find a fourteen or fifteen year old.
4 KIK user "kevinmartind33g" told PERSON 1 he engaged in sexual activity with his former roommate's
5 11-year-old daughter when he was thirty years old. Specifically, KIK user "kevinmartind33g" stated,
6 "Her parents were separate and her dad was fucking her. Her mom was in denial about it. It was great
7 she was into it and was still tight I didn't last too long." PERSON 1 replied, "I wish there was a way to
8 hook up with other pedos and share your girls lol." KIK user "kevinmartind33g" continued and stated
9 that he has a family friend with two girls and that he might try to play around with one in a few years.

10    33.    Further, KIK user "kevinmartind33g" told PERSON 1 that he was communicating online
11 and trying to set up meetings with women who have daughters but he has yet to be successful to set up
12 the meet. PERSON 1 then asked KIK user "kevinmartind33g" if he was in the United States because
13 PERSON 1 wanted to meet up with him in a few years when the girls were ready. KIK user
14 "kevinmartind33g" replied he was in the United States but that PERSON 1 had to bring a young girl also
15 when they met.

16    34.    Lastly, KIK User "kevinmartind33g" offered PERSON 1 advice on how to get children to
17 join into sexual activity with PERSON 1 and a partner should PERSON 1 become involved with a
18 woman who had children.

19    35.    On or about July 13, 2016, PERSON 1 was indicted by a federal grand jury in a five-
20 count indictment charging him with Attempted Coercion and Enticement of a Minor, Distribution of
21 Child Pornography, and Possession of Child Pornography.

22    36.    On or about July 19, 2016, FBI Dallas submitted a preservation request to KIK
23 Interactive, Inc., for the preservation of the account of "kevinmartind33g." An administrative subpoena
24 was then submitted to KIK for subscriber information related to the "kevinmartind33g." account. KIK
25 Interactive responded to the request and indicated that the account holder's e-mail address was
26 kjmartin6485@gmail.com, and that the account had been established on or about September 16, 2015.

27    37.    FBI Dallas followed up by issuing an administrative subpoena to Google, Inc., for
28 subscriber records associated with the above listed email account. Google, Inc., replied on August 5,

1 | 2016, and provided the following information for the account registrant:

2 | Subscriber Name: Kevin Martin
   | Email Address: kjmartin6485@gmail.com
3 | Created On: 09/11/2015
4 | SMS: 916-917-9157

5 | 38.    Based upon this information, FBI Dallas submitted an administrative subpoena to

6 | Verizon Wireless for subscriber information related to the above listed telephone number from

7 | September 11, 2015 through August 15, 2016. Results were received from Verizon on September 19,

8 | 2016. Below is the information associated with the telephone account 916-917-9157:

9 | Subscriber Name: Kevin Martin
10 | Address:              Sacramento, CA 95835
   | Registration Date: 4/30/2015
11 | Disconnect Date: 4/22/2016
   | Telephone No.: 916-917-9157
12 | Account number:        3-1

13 | On April 22, 2016, the disconnect date, the subscriber information changed to:

14 | Subscriber Name: KP Transport Inc.
15 | Address:              Sacramento, CA 95835
   | Registration Date: 4/22/2016
16 | Telephone No: 916-XXX-    , 916-917-9157
   | Account number:        2-1
17 |

18 | 39.    On September 26, 2016, after receiving the above subscriber information, FBI Dallas

19 | forwarded the subscriber information and other investigative documents to FBI Sacramento to conduct

20 | an investigation of the user of the KIK messaging account "kevinmartind33g" with associated e-mail

21 | account of kjmartin6485@gmail.com.

22 | **B.    KIK User Kevinmartin33g's Conversations with Person 2**

23 | 40.    Based on additional information from FBI Dallas, "kevinmartind33g" had additional KIK

24 | conversations with PERSON 2 in at least June and July of 2016. During their conversations,

25 | "kevinmartind33g" told PERSON 2 that he is "looking for some one [sic] to get together with and have

26 | kids. Then when they are old enough we could have fun with them." Later in the conversation,

27 | "kevinmartind33g" asked Person 2 if he or she had children. PERSON 2 responded, "No. Want to."

28 |

AFFIDAVIT                                              15

1 "Kevinmartind33g" replied "Cool would you want to bring them into the bed when they are old
2 enough?" Person 2 responded, "All the way from birth."

3     41.    "Kevinmartind33g" also asked Person 2 "Besides incest what else are you into"?
4 PERSON 2 responded "crossdressing lil ones." "Kevinmartind33g" inquired if PERSON 2 had seen
5 bestiality videos and Person 2 said that he or she had but was not into animals.

6
7     42.    Later in the conversation, "Kevinmartind33g" revealed that he is an over the road truck
  driver and asked PERSON 2 "if we get together and have a kid would you like to go on the road once in
8
  a while. The 2 of you can take turns on me when I'm driving." From Affiant's training and experience,
9
10 "taking turns on me when I'm driving" is slang for oral copulation.

11     43.    On June 18, 2016 at 3:12:48 PM (UTC) "kevinmartind33g" sent PERSON 2 a Dropbox
12 link, the contents of which are unknown to law enforcement. On June 19, 2016 at 1:01:44AM (UTC),
13 "kevinmartind33g" asked PERSON 2, "Were you able to play the vids I sent"? PERSON 2 responded
14 "Maybe later." "Kevinmartind33g" stated "I can sent you 1 on kik if you want." PERSON 2 said "Ok.
15 That's Kool."

16     44.    On July 4, 2016, "Kevinmartind33g" sent PERSON 2 another Dropbox link with the
17 words "8 videos."

18     45.    "Kevinmartind33g" also sent PERSON 2 a photograph that "Kevinmartind33g" claimed
19 was a photograph of himself. The person in the photograph sent by "Kevinmartind33g" appears to be
20 the same person whose photograph appears in the California Department of Motor Vehicles records
21 associated with Kevin Joseph Martin, DOB    1974.

22     C.    **KIK User Kevinmartind33g's Conversations with FBI Sacramento Undercover**
23           **Employee**

24     46.    Using the KIK messaging account username of "kevinmartind33g" identified by FBI
25 Dallas, an FBI Sacramento undercover employee (UCE) contacted "kevinmartind33g" on KIK on
26 March 9, 2017. Almost immediately, "kevinmartind33g" asked the UCE what the UCE was "into" and
27 told the UCE that "kevinmartind33g" was "into younger stuff." "Kevinmartind33g" then sent the UCE
28 a photo of what appeared to be a pre-pubescent girl, appearing to be approximately six or seven years

1  old, pulling down pink pants and underwear exposing her vagina. The girl's face was not visible, and
2  the genital area was the focal point of the photo.

3      47.  "Kevinmartind33g" then immediately asked the UCE if the UCE had Dropbox and said
4  that "kevinmartind33g" kept all of his videos on Dropbox. "Kevinmartind33g" then sent the UCE a
5  Dropbox link ending in "aoNx8JA30IijBNa?dl=0."

6      48.  When the UCE accessed the Dropbox link it contained over 80 files of videos and photos
7  depicting child pornography and erotica. The following are a sample of the video files containing child
8  pornography that were viewed from the Dropbox link:

9      a12fda2c-cff: This is a video depicting a pre-pubescent nude girl who appears to be
10     approximately four to six years old. The minor is sitting on what appears to be a bed with her
11     legs spread. An adult male penetrates the minor's vagina with his penis. At one point in the
12     video the minor makes some noises that may be words, but are indecipherable. The adult male
13     responds, "You don't like it?" The girl makes some more noises and the adult male continues to
14     penetrate the minor's vagina with his penis for a few more seconds before the video cuts out.
15     dc2d7eb6-b2: This is a video depicting a pre-pubescent girl who appears to be approximately
16     four to seven years old sitting upright, with her legs spread. The words "Fuck Me" with an
17     arrow pointing down to the girl's vagina are written on the girl's stomach. An adult male penis
18     penetrates the minor's vagina.
19     b579e6a9-ec: This is a video that depicts a pre-pubescent girl who appears to be approximately
20     three to five years old. The minor is fully clothed sitting on a bed looking towards the camera,
21     and licking an adult male's erect penis as he kneels on the bed in front of the minor. The adult
22     male's face is not visible.

23
24     49.  Later in the conversation, "kevinmartind33g" asked the UCE if the UCE had children.
25  The UCE reported that the UCE had an 11-year-old daughter. "Kevinmartind33g" shared that he had a
26  stepdaughter who is now 20 years old, but lamented that he never "got to do any thang with her because
27  she is way too close to her mom." "Kevinmartind33g" also shared that before he got married he "got to
28  play around with [his] roommates [sic] daughter" who was about 11 years old at the time.

1    50.    "Kevinmartind33g" then had the following chat with the UCE where "Kevinmartind33g"
2  inquired about the sexual acts the UCE had purportedly done with his fictitious 11-year old daughter
3  (hereinafter "11-year daughter") and told the UCE what to do in order to get the 11-year daughter to
4  have "full sex sooner":

5          **kevinmartind33g**: What have you done with her [the UCE's daughter]?

6          UCE: ya. she fingers herself and she sucks ok.

7          **kevinmartind33g**: Nice it takes a bit for her to get stretch [sic] out so that she can take it. The
8          girl I had was getting it from a baby. They [his previous roommate and the father of the 11 year
9          old girl, and the girl's mother] weren't together very long so he got to do what ever he wanted so
10         she grew up into it.

11         UCE: ya. i havent done that yet, but it could happen.

12         **kevinmartind33g**: Has she [UCE's daughter] have [sic] an organism [sic] yet

13         UCE: ya. i think that's why she likes it. lol.

14         **kevinmartind33g**: Cool you should show her some of the vids that might want her to have full
15         sex sooner.

16         UCE: oh i have. i think she would but im kinda big n i dont want to hurt her. lol.

17         **kevinmartind33g**: Yah you kind of have to get her stretch out a bit. Does she have a different
18         size dildos that she can use.

19         UCE: no. i havent done dildos.

20         **kevinmartind33g**: That might be your next move. You could get small anal ones that she can
21         use.

22         UCE: ya. good idea.

23         **kevinmartind33g**: Does she put her finger in or just rub her pussy.

24         UCE: both. i love to watch.

25         **kevinmartind33g**: Cool then it should be easier if you haven't already you should start to finger
26         her and tell her if she wants to take you then she need to start to use 2 fingers.

27         UCE: ya. i've used my fingers. trying to stretch it. dildos might b the way.

28         **kevinmartind33g**: ya.

1    **kevinmartind33g:** When you can send me some pics or vids. And if your [sic] comfortable

2    send me some of you and your daughter or your daughter.

3    51.    The UCE agreed but told "kevinmartind33g" that the UCE's thumb drive was not

4    working so the UCE could not send anything at the time.

5    52.    On April 1, 2017, "kevinmartind33g" again reached out to the UCE via KIK messenger.

6    "Kevinmartind33g" asked the UCE if the UCE had gotten any "small dildos" for the UCE's daughter

7    saying "Yah that should open her up." "Kevinmartind33g" then asked for a picture of the UCE's

8    daughter and said that the picture did not have to be nude.

9

10   53.    Later in the same KIK chat, "kevinmartind33g" and the UCE had the following

11   discussion:

12   **kevinmartind33g:** Well why don't I come over and fuck your daughter and you can video us

13   for me ﹨

14   **UCE:** man. hell yes. r u for real or just sayin?

15   **kevinmartind33g:** For real

16   **kevinmartind33g:** I don't kid about this stuff

17   **UCE:** i don't either. when will u be back here?

18   **kevinmartind33g:** It's going to be a bit I'm on my way to Los Angeles then I have to go back

19   to Louisiana to move some trucks to Wyoming. After that I'll have the truck all to my self so.

20   We cant meet up and either do it in my truck or get a hotel room.

21   **UCE:** shit. making me wait. i can get a room. have u done this before? ive never met up

22   **kevinmartind33g:** I live in Sacramento where do you live.

23   **UCE:** im north of sac

24   **kevinmartind33g:** I never met up with some one before but I did fuck a 10 year old before

25   **UCE:** oh. was she good?

26   **kevinmartind33g:** I'm so fucking hard now. Does your daughter like to look at cock?

27   **UCE:** ya

28   **kevinmartind33g:** Yah she was her dad had been doing her for [sic] a baby

AFFIDAVIT                                                19

1    UCE: wow

2    **kevinmartind33g:** [sent a picture of an adult man holding his erect penis, with the man's pubic

3    hair and part of his thighs in the picture] I need to shave

4    UCE: lol. ill show her this when were alone

5    **kevinmartind33g:** Have her send me a pick of her pussy next time you're alone

6    **kevinmartind33g:** Are you close to redding or reno

7    **kevinmartind33g:** Do you want to exchange phone number [sic]

8    UCE: i dont take pics of her pussy. im scared ill get caught. i just collect

9    UCE: were [sic] up by Roseville

10    UCE: hang on

11    **kevinmartind33g:** Shit that's awesome I'm in Natomas

12    UCE: hey, sry. gotta go. games over [previously in the conversation the UCE told

13    kevinmartind33g that the UCE was at his 11-year old daughter's soccer game]

14    **kevinmartind33g:** Ok let get back [sic] to me later we will exchange phone number. And

15    definitely get together next time I'm home

16    **kevinmartind33g:** Your daughter can take turns sucking our cocks whale [sic] we eat her out

17    **kevinmartind33g:** This is my number text me when you can 916-917-9157.

18    54.    The phone number provided by "kevinmartind33g" in this April 1, 2017, KIK chat is the

19    same phone number FBI Dallas received through administrative subpoena to Google, Inc., for subscriber

20    records associated with the kjmartin6485@gmail.com. It is also the same phone number that Verizon

21    records indicate was registered to Kevin Martin at                           Sacramento, California 95835,

22    from April 30, 2015 to April 22, 2016, and then to KP Transport Inc. at

23    Sacramento, California 95835, from April 22, 2016 to April 19, 2017.

24    55.    On March 31, 2017, FBI Sacramento submitted an administrative subpoena to Verizon

25    Wireless for subscriber information related to the above listed telephone number from August 15, 2016

26    through March 29, 2017. Verizon's business records indicated that the device related to this phone

27    number has the following IMEI 990004871974440. Based on my training and experience I know that

28    an IMEI is a unique identifier for a device.

1    56.    Affiant called Verizon on April 19, 2017, and a Verizon representative confirmed that as
2 of April 19, 2017, KP Transport is still listed as the subscriber of the phone number 916-917-9157.

3    57.    According to publicly available information on the California Secretary of State's
4 website as of April 19, 2017, KP Transport's Statement of Information filed on November 5, 2015, lists
5 Kevin Martin as the Chief Executive Officer of KP Transport Inc., and
6 Sacramento, California, as the street address of both the principal executive office and the principal
7 business office in California.                    is listed as the Secretary and Chief Financial Officer with
8 the same address.

9    58.    Later that same day (April 1, 2017), "kevinmartind33g" sent another KIK message to the
10 UCE stating "When I get home we can meet somewhere we are both comfortable like some place in a
11 mall. Then we will meet some where private like a hotel."

12    59.    In a later KIK chat on April 5, 2017, "kevinmartind33g" told the UCE that he had been at
13 home so he had to "dump kik" from his phone and had to "reload" his Dropbox because sometimes
14 "kevinmartind33g's" wife checks his phone.

15    60.    In a KIK chat on April 7, 2017, "kevinmartind33g" asked the UCE to send a picture of
16 the UCE's daughter. Specifically, "kevinmartind33g" asked the UCE to "send me a pick of her with
17 your dick in her mouth" and "one of your finger in her pussy." The following conversation then ensued:

18        **kevinmartind33g:** I'm getting hard thinking about it [presumably referring to the request for
19        pictures of the UCE's daughter]. Too bad I'm driving.

20        UCE: im hard as rock!

21        **kevinmartind33g:** How old is your daughter again I forgot

22        **UCE:** 11

23        **kevinmartind33g:** Nice I hope you don't mind but when we get together after we meet. I'm
24        going to stretch her pussy and fuck her.

·25        UCE: so hot. i cant wait to watch you do it.

26        **kevinmartind33g:** Are her tits starting to grow in

27        UCE: just barely

28        **kevinmartind33g:** Cool I like when they are still flat chested.

1

...

2 **kevinmartind33g:** Send me a pick a pice [sic] of paper on her chest saying "I want you joe."

3 61. On April 10, 2017, "kevinmartind33g" and the UCE again chatted via Kik messenger.
4 During this conversation, "kevinmartind33g" again asked for a picture of the UCE's daughter with a
5 sign on her chest. This time, he requested that the sign read "Joe I want you." The conversation turned
6 to how to best hide electronic devices used for chatting from the UCE's and "kevinmartind33g's" wives,
7 and "kevinmartind33g" stated he had a secure portion of his phone, "...so I put my picks and vids their
8 [sic]...That's why I use an old phone. It's an [sic] back up phone that I have." "kevinmartind33g" told
9 the UCE that when he is home, he sometimes keeps that phone with him to play games.

10 62. Also during the conversation on April 10, 2017, "kevinmartind33g" sent a Dropbox link
11 to the UCE, but the UCE was unable to open the video file it linked to. The UCE asked what the video
12 depicted, and "kevinmartind33g" replied "An 7 to 12 year old getting stretch out then fucked." He later
13 asked the UCE if he had yet told his daughter that "I ["kevinmartind33g"] want to fuck her in her
14 pussy." Near the end of this conversation, "kevinmartind33g" sent two videos within Kik Messenger to
15 the UCE. Both depicted child pornography.

16 63. On April 13, 2017, "Kevinmartind33g" asked, "Were you able to get a pick with the sign
17 and your daughter" The UCE then sent a picture purporting to depict the fictitious daughter with a
18 handwritten sign saying "Joe I want to be with you" covering her face and part of her arms.
19 "Kevinmartind33g" responded, "Nice I'll let you know when I'm in town so we fan [sic] meet" and
20 asked a couple of questions about the daughter's appearance. Then "Kevinmartind33g" states, "Can't
21 wait I be fucking her pussy and she can suck your dick." The two discussed when "Kevinmartind33g"
22 would next be in the Sacramento area, and possible meeting places. "Kevinmartind33g" ended the
23 conversation by telling the UCE "Start stretching out that little pussy"

24 64. On April 17, 2017, "Kevinmartind33g" initiated a chat by sending the UCE another
25 picture of his penis with the messages, "Show your daughter is shaved some lol" and "Let me know
26 what you daughter thinks of the video I sent you I can't wait to meet her" followed by two pictures of a
27 hand holding an erect penis.

28 ///

AFFIDAVIT 22

1  65. "Kevinmartind33g" then told the UCE, "Hay if you don't get to me before I get home
2  text me on the phone # I gave you [referring to 916-917-9157]. I take kik off this phone so my wife
3  doesn't see it. I'll let you know when I get home."

4  66. On April 18, 2017, the UCE sent a text message to 916-917-9157, stating the UCE got
5  his phone working. This is the phone number that "Kevinmartind33g" previously provided to the UCE
6  in a KIK chat as "Kevinmartind33g"'s cell phone number.

7  67. Over the course April 18 and April 19, 2017, the UCE and the user of the DEVICE,
8  talked via text messages about making plans for the user of the DEVICE to meet the 11-year old
9  daughter. On April 18, 2017, the UCE told the user of the DEVICE that his 11-year old daughter had a
10 short day at school on Friday, and proposed meeting then. The user of the DEVICE was initially unsure
11 if he/she would be available. The user of the DEVICE texted, "If H[daughter's name] has a skirt have
.12 her were it and I'll finger her when we meet. If I have time on Friday. Or some time in the next 2
13 weaks."

14 68. On April 19, 2017, the user of the DEIVCE texted, "When we meet I'll have some more
15 vids I want to show XXX [the name of the fictitious daughter]." and "Hay I just got it figured out. We
16 can meet Friday afternoon. Let me know what time."

17 69. Throughout the conversation, the user of the DEVICE made requests for the UCE to call
18 him. The user of the DEVICE told the UCE, that the UCE can call the user of the DEVICE anytime,
19 even while he is home, and his wife will not suspect anything: "You can call me when ever I have a
20 friend in Louisiana that I used to work with in North Dakota. His name is [the UCE's first name] also so
21 my wife wouldn't even know. Lol just don't call too late at night because Louisiana is 2 to 3 hours ahead
22 of California. This way you can call any time"

23 70. Between approximately 8:38 a.m. and 9:01 a.m. PST, the user of the DEVICE and the
24 UCE exchange the following text messages wherein they discuss meeting for the purpose of performing
25 sex acts on the 11-year old daughter:

26 **User of DEVICE**: That ok If you want we can meet in have a good size Suv we can have fun
27 in. Or we can goto to a hotel.

28 **UCE**: I can get a hotel room. I told H [the first initial of the 11-year daughter's name] it would

AFFIDAVIT                                                        23

1 | be a fancy kind of date. I think she'd be more comfortable

2 |     UCE: Make sure u bring some lube. You'll need it and she'll feel better.

3 |     **User of DEVICE:** But I'm out of money we have to pay the fuel Bill, company taxes, fuel taxes,
4 | and permits. Other wise I would chip in on a room.

5 |     Cool but I would only have about and hour or two at the most.

6 |     Ok Next year when we get a second business I wouldn't be on the road and it will be easier for
7 | me to get away.

8 |     **UCE:** No prob. I'll let her swim afterward and she'll be cool. I'll cover the room this time. Just
9 | bring lube and if you can bring her something so she'll like you, that'd be good.

10 |     UCE: She's a little nervous

11 |     UCE: Maybe like a stuffed animal or her favorite candy or something.

12 |     **User of DEVICE:** And when H[name of fictitious daughter] starts high school she can evite her
13 | friends. You just can't start to fuck H[] right away in front of them. But you can start fucking them and ·
14 | when I'm fucking H[] she can come over and start to suck your dick and go from their.

15 |     **UCE:** Oh man. That's so hot. I'm gonna get hard at work! Not good...

16 |     **User of DEVICE:** Cool What kind for candy does she like?

17 |     **User of DEVICE:** Lol I'm glad no one has shown up yet. I'm already hard.

18 |     **User of DEVICE:** Tomorrow when you and H are alone or Friday give me a call we can talk
19 | on the phone that would help with all our nerves.

20 |     **UCE:** OK. I can do that. And she likes sweet tarts

21 |     **User of DEVICE:** Too funny I have some I'm the truck (sends a picture of a bag of Sweet
22 | Tarts)

23 |     **User of DEVICE:** We can meet in our cars around Garfield Ave. I'll let you know theirs a place
24 | around their where I buy truck stuff. Friday I'll send you the address. Then we could goto what ever
25 | hotel you like.

26 |     **User of DEVICE:** I have more vids that I'll sent you I can bring with me. And we all can
27 | watch. H[] might like that.

28 |     This conversation continued throughout April 18, 19, and 20, 2017, off and on, and continues as

1    of this writing. The last text message received from the user of the DEVICE reads: "Life sucks I have -
2    $40. In my bank until I get paid for a load on Monday. Thank God for credit cards. And the $20. I
3    have in my pocket. That I can buy sweet tarts with [emoticon smiley face]."

4          71.     Investigation of publicly available information revealed that three people are associated
5    with the residence at          Sacramento, California: Kevin Martin (male), DOB
6    1974;        (female), DOB      ; and        (female), DOB
7          . The dates of birth and genders were obtained from Department of Motor Vehicle
8    Records. DMV records also list Kevin Martin's address as       Sacramento, CA.
9          72.     Four vehicles are registered to the above address: (1) a Toyota Scion TC, California
10   license plate     40 in the names Kevin Martin and      ; (2) a Ford Explorer, California
11   license plate 7GMB102 in the name Kevin Martin; and two semi-trailer tractors, with California license
12   plates 4QHQ293 and WP85122, both in the name KP Transport, Inc.

13          73.     I conducted surveillance at the      residence on April 20, 2017. I observed the
14   Ford Explorer at the residence, parked in the driveway. I also observed a large long-haul truck cab with
15   no trailer attached, which was blue in color and had "KP Transport, Inc." printed on the driver's side
16   door and bore the California license plate WP85122. This was parked on the street on the side of the
17   house. The garage door of the house was open and I observed various home belongings and boxes in the
18   garage. I observed the Toyota Scion at the location during a previous surveillance of the residence on
19   March 27, 2017, but it was not present on April 20, 2017 when I drove by.

20          74.     Based on my previous investigative experience related to child exploitation
21   investigations, and the training and experience of other law enforcement officers with whom I have had
22   discussions, I know there are certain characteristics common to individuals who have a sexual interest in
23   children and/or produce, receive, or possess images of child pornography:

24          a)     Individuals who are involved in the collection, trading and possession of Child
25          Pornography will often share only portions of their online storage and keep other items stored in
26          separate folders within the same account. These items can potentially be children that the subject
27          has physical access to and thus is memorializing those contacts. In addition, other files, even if
28          they do not contain child exploitation material, may contain images or videos, which would

1     assist in identifying the owner of the account.

2     b)     Individuals who have a sexual interest in children and/or produce, receive, or possess

3     images of child pornography almost always possess and maintain their hard copies of child

4     pornographic material, that is, their pictures, films, video tapes, magazines, negatives,

5     photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and

6     security of their home or some other secure location. Individuals who have a sexual interest in

7     children or images of children typically retain pictures, films, photographs, negatives, magazines,

8     correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many

9     years.

10     c)     Likewise, individuals who have a sexual interest in children and/or produce, receive, or

11     possess images of child pornography often maintain their child pornography images in a digital

12     or electronic format in a safe, secure and private environment, such as a cellular device or

13     computer and surrounding area. These child pornography images are often maintained for

14     several years and are kept close by, usually at the possessor's residence, inside the possessor's

15     vehicle, or, at times, on their person, to enable the individual to view the child pornography

16     images, which are valued highly.

17     d)     Individuals who have a sexual interest in children and/or produce, receive, or possess

18     images of child pornography also may correspond with and/or meet others to share information

19     and materials, rarely destroy correspondence from other child pornography

20     distributors/possessors, conceal such correspondence as they do their sexually explicit material,

21     and often maintain lists of names, addresses, and telephone numbers of individuals with whom

22     they have been in contact and who share the same interests in child pornography.

23     e)     Individuals who have a sexual interest in children and/or produce, receive, or possess

24     images of child pornography prefer not to be without their child pornography for any prolonged

25     time period. This behavior has been documented by law enforcement officers involved in the

26     investigation of child pornography throughout the world.

27

28

## VI. ELECTRONIC STORAGE AND FORENSIC ANALYSIS

75. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools. I also know that information that has been deleted can sometimes be recovered with forensics tools, as well.

76. Forensic evidence. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

a) Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b) Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c) A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d) The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e) Further, in finding evidence of how a device was used, the purpose of its use, who used

1    it, and when, sometimes it is necessary to establish that a particular thing is not present on a
2    storage medium.

3    77.    Nature of examination. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the
4    warrant I am applying for would permit the examination of the DEVICE consistent with the warrant.
5    The examination may require authorities to employ techniques, including but not limited to computer-
6    assisted scans of the entire medium, that might expose many parts of the device to human inspection in
7    order to determine whether it is evidence described by the warrant.

8    78.    It is respectfully requested that this Court issue an order sealing, until further order of the
9    Court, all papers submitted in support of this application, including the application, the search warrant
10   and memorandum of law. I believe that sealing these documents is necessary because the items and
11   information to be seized are relevant to an ongoing investigation and the subject is unaware of the
12   investigation. Revealing the search warrant in advance may jeopardize the investigation by allowing
13   time for the destruction of evidence. Based upon my training and experience, I have also learned that
14   online criminals actively search for criminal affidavits and search warrants via the Internet, and
15   disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online
16   through forums. Premature disclosure of the contents of this Affidavit and related documents may have
17   a significant and negative impact on the continuing investigation and may severely jeopardize its
18   effectiveness.

19                                          **CONCLUSION**

20   79.    I submit that this affidavit supports probable cause for a search warrant authorizing the
21   examination of the Device described in Attachment A to seek the items described in Attachment B.

22   80.    Based on the conversations that the UCE had with the user of the DEVICE about meeting
23   for the purpose of engaging in sexual acts with the 11-year old daughter, I anticipate law enforcement
24   will come into contact with DEVICE in the coming days. I provide this information for the benefit of
25   the Court, and not as additional probable cause. I submit that there is probable cause to seize and search
26   the DEVICE wherever it may be found in the Eastern District of California regardless of whether the
27   proposed meet actually occurs.

28

AFFIDAVIT                                          28

81. The United States requests that the Court order this search warrant, the search warrant Affidavit and accompanying memorandum of law be kept under seal until further order of the Court since this investigation is continuing and the disclosure of the Affidavit, application, search warrant or memorandum of law will jeopardize the progress of an ongoing investigation.

Respectfully submitted,

Laura Mruk
Special Agent
Federal Bureau of Investigations

Subscribed and sworn to before me on: _4/21/17_

The Honorable Allison Claire
UNITED STATES MAGISTRATE JUDGE

Approved as to form by
AUSA SHELLEY D. WEGER

29

## ATTACHMENT A

The property to be searched is a SAMSUNG GALAXY SIII CELLULAR TELEPHONE WITH PHONE NUMBER 916-917-9157 AND IMEI 990004871974440, hereinafter the "Device," wherever it may be found in the Eastern District of California.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

1

## ATTACHMENT B

1.   The DEVICE and all records on the DEVICE described in Attachment A that relate to violations of 18 U.S.C. §§ 2252(a)(2) and 2242(b) including:

- a.   Any child pornography or visual depictions of minors engaged in sexually explicit conduct in any form, including but not limited to:

     i.   Evidence identifying the location from which images of child pornography were downloaded, including date and time of such downloads;

     ii.  Evidence identifying whether image and/or video files containing child pornography were ever viewed, to include date and time of such viewing;

     iii. Evidence identifying whether images and/or videos files were deleted, to include date and time of deletion;

- b.   Any child erotica;

- c.   Any information pertaining to any individual's sexual interest in minors, including interest in child pornography, visual depictions of minors engaged in sexually explicit conduct, or erotica;

- d.   Any text messages, emails, chats, or other communications regarding the sexual exploitation of minors;

- e.   Any items, images, documents, communications, records, and information related to the distribution, receipt or possession of child pornography or visual depictions of minors engaged in sexually explicit conduct;

- f.   All screen names, user names, and true names of others who may have operated as the source of child pornography or visual depictions of minors engaged in sexually explicit conduct, in any format, downloaded and possessed by the target device;

- g.   Evidence of user attribution showing who used or owned the DEVICE at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

- h.   Any evidence of the attempted or actual persuasion, inducement, enticement, or coercion of any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense in any form;

i. All screen names, user names, and true names of others who are identified during the search as having contacted minors;

j. records of Internet Protocol addresses used;

k. Evidence of malicious software ("malware");

l. Evidence of the lack of such malicious software;

m. Passwords, encryption keys, and other access devices that may be necessary to access the Device or the applications contained on the Device; and

n. records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

2.    Evidence of user attribution showing who used or owned the DEVICE at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.